224 So.2d 617

**Morgan J. MOORE**

v.

**ANDALUSIA HOSPITAL, INC., a Non-Profit Corporation.**

4 Div. 341.

Supreme Court of Alabama.

June 12, 1969.

**260**

. .J. Fletcher Jones, W. H. Baldwin, Andalusia, for appellant.

Robert B. Albritton of Albrittons & Rankin, Andalusia, for appellee.

HARWOOD, Justice.

The appellant filed a bill seeking in essence to have a receiver appointed to carry on the affairs of the respondent, the Andalusia Hospital, Inc.

The Chancellor sustained the respondent's demurrer to the bill and dismissed it. Hence this appeal.

The bill averred in substance that the respondent hospital corporation was organized under the provisions of the Alabama Non-Profit Corporation Act (Secs. 203–263, Title 10, Code of Alabama 1940), and was organized to conduct and carry on a hospital facility, and is now so operating such hospital which was financed in large part through public subscriptions; that the acts of the Directors are illegal, oppressive, or fraudulent in that those in control of the hospital have deprived the residents of the community, including the contributors to the hospital, of the right to select a physician of their choice in utilizing the hospital.

The bill as amended further avers that the respondent corporation is unable to carry out the purposes stated in its charter to conduct a community public hospital in

that it has discriminated against certain physicians practicing in Covington County, Alabama, by refusing to permit these physicians to use its facilities on the same basis as other physicians, thereby depriving citizens of the territory of using the hospital and "still use the physician and surgeon of their choice."

The amendment further avers that the complainant is a member of, and a contributor to, the respondent hospital, and that he is a duly licensed physician and surgeon practicing in Andalusia, and surrounding territory; that he is deprived of his right to use the facilities of the respondent hospital on the same basis as other physicians practicing in the same territory by being refused the privilege of serving on the active medical staff, and thus the directors have deprived his patients, many of whom are contributors to the hospital, of the right to use the hospital and be attended by the complainant.

The bill lastly avers that the respondent hospital has abandoned its public and non-profit purpose in that its affairs have been conducted by the directors and officers in such a manner as to "result in profit to, personal gain for, certain of the members and officers of the corporation."

The bill asserts it is brought under the provisions of Section 247, Title 10, Code of Alabama 1940. In parts pertinent to this review, Section 247 provides as to the jurisdiction of a court to liquidate the assets and affairs of a non-profit corporation:

"Courts of equity shall have full power to liquidate the assets and affairs of a corporation:

\* \* \* \* \* \*

"(2) That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; or

"(3) that the corporate assets are being misapplied or wasted, or

"(4) that the corporation is unable to carry out its purposes."

The bill avers that the acts of the directors or those in charge of operating the hospital have been illegal, oppressive, or fraudulent.

█ A general averment of fraud (or of illegal, or oppressive conduct) without setting forth facts on which such averment is made is insufficient. Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 77 So. 574. The appellant did set forth facts in an effort to spell out the fraudulent, illegal, or oppressive conduct of the directors of the hospital.

These facts are to the effect that by refusing to name the complainant to the active medical staff of the hospital, the directors deprived him of using the facilities of the hospital on the same basis as other physicians and surgeons, and his patients were thereby deprived of their right to use the facilities of the hospital.

Such averment does not transfuse equity into the bill.

The bill avers that the hospital corporation was organized under the Alabama Non-Profit Corporation Act (Secs. 203–263, Title 10, Code of Alabama 1940). The Act provides for (a) the organization of such corporation by three or more natural persons (Sec. 230), and (b) that the management, control, and direction of the affairs of such corporation be by a Board of Directors (Sec. 219), elected by the members as provided in its by-laws.

█ Thus a non-profit corporation organized pursuant to the Alabama Non-Profit Corporation Act is a private corporation. It is not controlled or owned by the state, nor supported by public funds. As stated in Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 46 A.2d 298:

"\* \* \* So, a hospital, although operated solely for the benefit of the public and not for profit, is nevertheless a private institution if founded and maintained by a private corporation with authority to elect its own officers and directors."

To the same effect see State ex rel. Sams v. Ohio Valley General Hospital Ass'n., 149 W.Va. 229, 140 S.E.2d 457; 24 A.L.R.2d 850; Hughes v. Good Samaritan Hospital, 289 Ky. 123, 158 S.W.2d 159; Mauer v. The Highland Park Hospital Foundation, 90 Ill.App.2d 409, 232 N.E.2d 776; West Coast Hospital Ass'n. v. Hoare, Fla.Sup.Ct. (1953), 64 So.2d 293.

Being a private corporation, the appointment of members of the medical staff was solely within the discretion of the Board of Directors, and the refusal of the Board of Directors to appoint a particular physician or surgeon to the medical staff of the hospital is not subject to judicial review. Mauer v. The Highland Park Hospital Foundation, supra; Sams v. Ohio Valley General Hospital, supra.

Nor does appellant's membership in the corporation afford him any special rights or privileges in this regard. West Coast Hospital Ass'n. v. Hoare, supra.

Thus this aspect of the bill contains no equity.

The second aspect of the bill attempts to set up a violation of an equitable right by alleging that profit or gain resulted personally to members or officers of the corporation in transactions with the hospital corporation.

Article VII of the Certificate of Incorporation of appellee provides that the conduct of the business of the corporation shall be under the direction of the Board of Directors, and by Article VIII the Board of Directors is authorized to adopt, amend, and alter the by-laws of the corporation. Article XIV provides that the corporation shall not have stock, and that no dividends shall be paid nor income distributed to directors or officers "provided, however, the corporation may pay compensation in a reasonable amount to its Directors or Officers for services rendered."

In Article IX of the by-laws adopted by the Board of Directors it is provided that no member, director, officer, or employee of the corporation, no private individual or corporation shall ever receive any of the net earnings of the corporation, "provided, that this shall not prevent the payment of any such person of such corporation of such reasonable compensation for services actually rendered to or for the corporation in effecting any of its purposes * * *"

Section 228 of Title 10, Code of Alabama 1940 (a part of the Alabama Non-Profit Corporation Act) also provides that such a corporation "may pay compensation in a reasonable amount to its members, directors, or officers for services rendered * * *"

Therefore, the allegation in the bill that the affairs of the respondent corporation "have been conducted by the Director or those in control of the corporation in a manner that results in profit to, personal gain for, certain of the members and officers of the corporation" fails to aver that the affairs of the corporation were conducted in an illegal, fraudulent, or oppressive manner.

Even though members and officers may have gained a profit in transactions with the hospital corporation, if their charges for services rendered were reasonable, such transactions were legal. Bills in equity are construed against the pleader. Cullman Property Co. v. Hitt Lbr. Co., supra.

There is therefore no equity shown in this second aspect of the bill.

There being no equity in either aspect of the bill, the court properly sustained the demurrer thereto, several grounds of the demurrer going to the point that the bill did not contain equity.

Counsel for appellant further asserts that the Chancellor erred in dismissing the bill in addition to sustaining the demurrer, appellant being denied the opportunity to amend.

The record shows that the bill was filed on 15 April 1968. On 4 May 1968, the re-

spondent appellee filed its demurrers, and also its answer to the bill. The decree of the Chancellor recites:

"This matter coming on to be heard by the court on the 10th day of July, 1968, pursuant to the prior order of the court made and entered herein, the same was submitted for order on complainant's motion to require further answers to the interrogatories * * * and by agreement * * * for decree on respondent's demurrers to the bill of complaint as amended."

It appears from the record that the bill was amended on 17 July 1968, and on 31 July 1968, demurrers to the bill as amended were filed.

On 20 August 1968, after careful consideration of the bill as amended, "the oral argument and written briefs and argument of counsel," the court entered a decree finding that there was no equity in the bill as amended, and "it does not appear from anything on the face of such bill that it can be further amended so as to give it equity. Therefore, the Respondent's demurrers * * * are well taken and should be sustained and the bill as amended dismissed." The decretal portion of the decree adjudged and decreed in accordance with the above findings.

Thus, it appears that at the oral hearing before the court and after answers to the interrogatories had been filed and also a full answer, the complainant was permitted to, and did, amend the bill. The amendment did not supply equity to the bill.

It would appear reasonable for the court to assume under these conditions on 20 August 1968, that essential equity could not be supplied by further amending the bill.

As stated in Alabama Lime and Stone Co. v. Adams, 218 Ala. 647, 119 So. 853:

"* * * the court was not bound to assume that further opportunity to

amend would have produced a different result. There was, therefore, no error in dismissing the bill."

We can deduce nothing in the bill as amended, the Certificate of Incorporation, and the governing statutes that would indicate that the bill could be amended to supply it with equity. The court therefore did not err in dismissing the bill as amended.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.