Fathy Z. SAAD, M.D., Appellant,

v.

**SACRED HEART HOSPITAL.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 25, 1997.

Decided Sept. 17, 1997.

---

Donald H. Lipson, Allentown, for appellant.

Frederick J. Lanshe, Allentown, for appellee.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Fathy Z. Saad, M.D. (Dr. Saad) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) that denied his motion for post-trial relief from the trial court's order of March 26, 1996 denying his requests for a continuing temporary injunction and for a permanent injunction.

Dr. Saad was accepted into the Family Practice Residence Program (program) at Sacred Heart Hospital (Sacred Heart), a private hospital. Dr. Saad began the program on July 1, 1993 with a one year residency contract which expired on June 30, 1994. Instead of renewing Dr. Saad's contract for a second year, Sacred Heart extended his first year residency contract for three months so that he might receive additional training. Dr. Saad then received a second year residency contract which covered the period from October 1, 1994 to September 30, 1995. On April 28, 1995, Dr. Saad received a letter from Sacred Heart informing him that he was being released from the program as of June 30, 1995. On July 5, 1995, Dr. Saad filed with the trial court a complaint in equity and a petition for preliminary injunctive relief both of which sought to enjoin Sacred Heart from removing him from the program until he was afforded due process in the form of a fair hearing; Dr. Saad also requested that he be reinstated as a resident with full power to completely participate in all aspects of the program. By order of July 6, 1995, the trial court preliminarily enjoined and restrained Sacred Heart from releasing and terminating Dr. Saad from the program pending "administrative due process proceedings & determination on the merits of the case."

In accordance with Sacred Heart's bylaws [1], hearings were conducted before a review panel of three physicians on August 17, 1995, September 14, 1995, and September 28, 1995. The review panel unanimously concurred with the decision to release Dr. Saad from his contract and a summary of their decision was sent to Dr. Saad on October 13, 1995. Dr. Saad appealed the decision of the review panel to Sacred Heart's Board of Trustees which found no basis to overturn the decision of the review panel. The Board of Trustees notified Dr. Saad of their decision on January 3, 1996.

On January 5, 1996, Dr. Saad filed with the trial court a petition to extend and continue the preliminary injunction. A hearing was held before the trial court on February 12, 1996. Dr. Saad was the only person to testify on that date and the hearing was continued. By agreement of the parties, Dr. Saad filed on February 22, 1996, an amended complaint which contained six counts alleging, inter alia, a breach of an express contract, a breach of an implied contract, and various due process violations.[2] Dr. Saad requested the trial court to issue a "Preliminary and Final Injunction" directing Sacred Heart to reinstate him into the program and permit

---

1. Sacred Heart's bylaws do not provide for a full review process for residents; Sacred Heart, therefore, provided Dr. Saad with the same administrative process afforded to staff physicians in accordance with the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101–11152, which is incorporated into the bylaws. In accordance there with, Dr. Saad was notified by letter that he was permitted to be represented by counsel at the hearings, to call and cross-examine witnesses, and that the proceedings would be tape recorded. Dr. Saad was also informed of the names of the members of the review panel and the names of the witnesses that

Sacred Heart intended to call. See 42 U.S.C. § 11112.

2. In Count V of the amended complaint, Dr. Saad asserted an alternative cause of action that, in the event it is determined that he is not entitled to remain in the program, he is entitled to credit for two full years of training. In Count VI of the amended complaint, Dr. Saad alleged that Sacred Heart should be found in contempt of court for preventing him from obtaining the necessary training to complete his second year training.

him to complete his training as a resident.[3] A second hearing was held before the trial court on February 28, 1996, at which time Dr. Saad concluded his testimony; in opposition thereto, Sacred Heart presented the testimony of the director of the program, Raymond C. Buch, II, M.D. (Dr. Buch), and the testimony of Frederick A. Stelzer, M.D. (Dr. Stelzer) and Leslie Frances Carrol, M.D. (Dr. Carrol), two members of the review panel.

By order of March 26, 1996, the trial court, having found that Dr. Saad was afforded an adequate due process hearing by Sacred Heart prior to his final termination from the program, denied Dr. Saad's requests for a continuing temporary injunction and for a permanent injunction. On April 1, 1996, Dr. Saad filed a motion for post-trial relief asking the trial court to modify or change its order of March 26, 1996. Dr. Saad alleged, inter alia, that the trial court erred in failing to conclude that the findings of the review panel were not supported by substantial evidence.

After oral argument and consideration of the memoranda from counsel, the trial court, by order of March 7, 1997, denied Dr. Saad's motion for post-trial relief. In its opinion filed in support thereof, the trial court stated that in order to determine whether Dr. Saad was afforded due process, it assumed that he had a property or liberty interest in his opportunity to continue his residency, *citing Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).[4] The trial court then concluded that, since Dr. Saad is only seeking relief by way of a continuing or permanent injunction and is therefore not seeking monetary damages, it is without authority to review on a substantive level the decision of Sacred Heart to release him from the program, *citing Cooper v. Delaware Valley Med-*

*ical Center*, 539 Pa. 620, 654 A.2d 547 (1995); *Rosenberg v. Holy Redeemer Hospital*, 351 Pa. Superior Ct. 399, 506 A.2d 408, *petition for allowance of appeal denied*, 514 Pa. 643, 523 A.2d 1132 (1986). The trial court further concluded that Dr. Saad was given a full and fair hearing and that Sacred Heart had substantially complied with the procedures it had established and Dr. Saad, therefore, received more than adequate due process before his final termination from the program.

On appeal here, Dr. Saad first argues that the trial court applied an inappropriately limited scope of review and thereby failed to determine whether the decision of the review panel was supported by substantial evidence. In support thereof, Dr. Saad relies on *Boehm v. University of Pennsylvania School of Veterinary Medicine*, 392 Pa. Superior Ct. 502, 573 A.2d 575, *petition for allowance of appeal denied*, 527 Pa. 596, 589 A.2d 687 (1990) for the proposition that a proper due process analysis includes a review to determine whether substantial evidence supported the decision of the review panel. The Superior Court in *Boehm*, however, declined to review the institution's proceedings under a substantial evidence standard and instead merely concluded that the disciplinary proceedings complied fully with the procedures established by the school.[5]

■ In *Rosenberg*, the Superior Court held that the substance of a private hospital's staffing decision is not subject to judicial review and that a court may only review whether the hospital met its procedural requirements in making its decision. 351 Pa. Superior Ct. at 406–408, 506 A.2d at 412–413. In *Cooper*, our Supreme Court interpreted that the holding in *Rosenberg* did not preclude a physician from suing the hospital based on legitimate contract and tort theo-

---

**3.** Dr. Saad also sought litigation fees and "other relief as is equitable under the circumstances."

**4.** There is no precedent in Pennsylvania case law which holds that residents in medical education programs are entitled to due process prior to their termination.

**5.** Dr. Saad also directs attention to this Court's decision in *Allison v. Centre Community Hospital*, 145 Pa.Cmwlth. 495, 604 A.2d 294 (1992) where-

in we concluded that, for purposes of reviewing a hospital's decisions regarding staff privileges, the public-private dichotomy for determining the type of judicial review is no longer necessary. This Court then held that the trial court is limited to determining whether the hospital complied with federal and state "procedural safeguards" in revoking a doctor's staff privileges. 604 A.2d at 297. Accordingly, *Allison* does not support Dr. Saad's argument.

ries arising out of the peer review process. 539 Pa. at 629–631, 654 A.2d at 551–552. The Supreme Court noted that the distinction is in the remedies sought; Rosenberg only sought an injunction to have a staffing decision changed, unlike Cooper who sought damages under various tort and contract theories arising out of the peer review process. *Id.* The trial court herein correctly noted that Dr. Saad is only seeking equitable relief by way of a continuing or permanent injunction. The trial court, therefore, did not err in failing to determine whether the decision of the review panel was supported by substantial evidence since its review is limited to ensuring that the proper due process procedures were followed by Sacred Heart prior to Dr. Saad's termination from the program.

 Dr. Saad next argues that he was denied due process because Sacred Heart failed to meet its procedural requirements in the following ways: 1) two members of the review panel failed to understand the purpose of the hearing and their role as members of the review panel; 2) one member of the review panel considered facts not in evidence; and 3) the review panel was not provided with an independent attorney to assist in legal matters. While Dr. Saad raised these issues in the summary of argument portion of his brief, he failed to later address the same in his argument in chief. Having failed to do so, said arguments are waived. *See* Pa. R.A.P. 2116, 2119; *Savage v. Unemployment Compensation Board of Review,* 89 Pa.Cmwlth. 61, 491 A.2d 947, 950 n. 6 (1985).

Dr. Saad's final argument is that the trial court erred by failing to consider and make appropriate findings on the issues of 1) whether Sacred Heart breached its contract thereby entitling him to reinstatement by virtue of specific performance of the contract and 2) whether he is entitled to two years credit for the period of time he spent in the program. In *Zikria v. Western Pennsylvania Hospital,* 447 Pa. Superior Ct. 80, 668 A.2d 173 (1995), the Superior Court reemphasized that courts are only precluded from reviewing the substance of staffing decisions in cases where the plaintiff is seeking injunctive relief and that only when a plaintiff is seeking monetary damages under contract and tort theories does a court have the ability to substantively review the asserted claims. At no time did Dr. Saad ever seek monetary damages, but only an injunction reinstating him into the program. Thus, the trial court did not err in concluding that it was precluded from addressing both of the aforesaid claims as each would require review of the substance of Sacred Heart's staffing decision.

Accordingly, the order of the trial court denying Dr. Saad's motion for post-trial relief will be affirmed.

### ORDER

AND NOW, this 17th day of September, 1997, the order of the Court of Common Pleas of Lehigh County, dated March 7, 1997, is affirmed.